UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEE CLAY,

    Plaintiff,

            CASE NO. 2:07-CV-14634
            JUDGE ARTHUR J. TARNOW
            MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

CITY OF DETROIT,
DONDRE PENN and
KEVIN TREASUANT,[1]

    Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING
FIRST AMENDED COMPLAINT (Doc. Ent. 2)**

**I.**  **RECOMMENDATION:** If defendants do not produce non–parties Perdue-Eaddy and

York for deposition on or before January 30, 2009, on dates and times agreeable to plaintiff's

counsel, the Court should find defendants City of Detroit, Dondre Penn and Kevin Treasvant in

default as to plaintiff's allegations of liability in the first amended complaint (Doc. Ent. 2) and

set the matter for trial only as to damages.

**II.**  **REPORT:**

**A.**  **Procedural History**

   Plaintiff filed her original complaint on October 30, 2007.  Doc. Ent. 1.  On November 5,

2007, she filed a first amended complaint against the City of Detroit, Dondre Penn and Kevin

Treasvant.  Plaintiff's claims stem from the May 9, 2006, investigation regarding John Miller,

during which plaintiff alleges she was "physically assaulted by each of the Defendants in such a

_____

    [1]The correct spelling of this defendant's name is Kevin Treasvant.  Doc. Ent. 4.

fashion that she was pushed up against a house, handcuffed, and repeatedly beaten." Doc. Ent. 2 at 3 ¶¶ 11, 12. According to plaintiff, she was "kneed in her back several times while forcibly held up against the house, and also punched several times in her kidneys." Doc. Ent. 2 at 3 ¶ 12. She alleges that Penn and Treasvant "further assaulted [her] by pulling her arms back and up behind her while she was being pushed against the wall of the house, during which time Plaintiff heard a . . . 'popping sound' in her left shoulder. She advised th[e] officers that she was injured but was refused medical treatment." Doc. Ent. 2 at 3 ¶ 13. Plaintiff also alleges that Penn and Treasvant "ultimately arrested [her] and charged her with criminal acts for interfering with [a] police officer, which charges were ultimately dismissed by the Defendants." Doc. Ent. 2 at 3 ¶ 14.

Among plaintiff's claims are a violation of 42 U.S.C. § 1983 by the individual defendant officers (¶¶ 24-26); a violation of 42 U.S.C. § 1985 (¶¶ 27-30); a count against the City of Detroit (¶¶ 31-38); intentional infliction of emotional distress (¶¶ 39-41); and gross negligence (¶¶ 42-46). Doc. Ent. 2 at 6-14. On December 13, 2007, the City of Detroit filed an answer to the complaint, as did Penn and Treasvant. Doc. Entries 3 and 4. Plaintiff filed replies to these answers on December 28, 2007. Doc. Entries 5 and 6.

**B.     The Scheduling of Certain Depositions Has Been Addressed by this Court.**

On August 8, 2008, Judge Tarnow entered a stipulation and order setting the discovery deadline for October 2, 2008 and the dispositive motion cutoff for October 30, 2008. Doc. Ent. 36.

On October 17, 2008, I conducted a telephonic conference call with attorneys Ira B. Saperstein and Marion R. Jenkins. After conducting this conference with counsel, I entered an order directing that the parties proceed to take discovery depositions in the following sequence,

as counsel for the parties had agreed:

| | |
|---|---|
| Detroit Police Officer C. Perdue-Eaddy | November 18, 2008 at 2:00 p.m. |
| Detroit Police Officer E. Leyhey | November 24, 2008 at 10:00 a.m. |
| Detroit Police Officer Sergeant David R. Meadows | November 25, 2008 at 10:00 a.m. |
| Detroit Police Officer York | November 26, 2008 at 2:00 p.m. |
| Detroit Police Custodian of Narcotics | December 1, 2008 at 10:00 a.m. |

All depositions of City of Detroit Police Department employees were to be taken at defense counsel's office at the City of Detroit Law Department. I entered my order on October 21, 2008. Doc. Ent. 52.

On November 24, 2008, I received a facsimile from attorney Saperstein in which he requested an immediate telephone conference. Along with this request, attorney Saperstein attached a copy of his same-day letter to attorney Jenkins regarding depositions. On November 25, 2008, I entered an order regarding depositions. Doc. Ent. 56. Specifically, I ordered that the depositions were to be taken on dates and at times that were agreeable to plaintiff's counsel. The order further provided that, if the depositions were not completed by the end of December 2008, I would file a report recommending that defendants be considered in default as to liability and that the court set the matter for trial only as to damages. Doc. Ent. 56 at 2.

At some point, I received a two-page letter from plaintiff's counsel to defense counsel, dated December 5, 2008. Doc. Ent. 60-3 at 3-4. In part, plaintiff's counsel noted his intention "to request that [I] immediately make a recommendation to the Court that the City of Detroit be placed in Default and that the only remaining issue for Trial is damages." Thereafter, on December 9, 2008, I entered an order requiring defendant City of Detroit to show cause in writing no later than Monday, December 15, 2008 why I should not file a report recommending that defendant City of Detroit be found in default for the reasons stated in plaintiff's counsel's

letter of December 5, 2008.  Doc. Ent. 58. Defendant City of Detroit filed a response on

December 12, 2008.  Doc. Ent. 60.  On December 15, 2008, I entered an order which concluded

that defendant City of Detroit had adequately set forth reasons why I should not file a report

recommending that it be found in default and discharged the Court's December 9, 2008 show

cause order.  Doc. Ent. 61.[2]

## C.     Non-parties York and Perdue-Eaddy Have Not Yet Been Deposed, Nor Has the Custodian of Narcotics.

On December 15, 2008, the same day I entered my order discharging the Court's show

cause order, defendant City of Detroit filed a motion for protective order as to Officers York and

Perdue-Eaddy.  Doc. Ent. 63.  By an order entered this date, I have denied defendant City of

Detroit's motion to the extent it "requests that the depositions of Detroit Police Officer York and

Detroit Police Officer C. Perdue-Eaddy not be allowed."

On December 22, 2008, defendant City of Detroit filed a motion for relief from order.

Doc. Ent. 69.  By an order entered this date, I have granted defendant City of Detroit's motion to

the extent it "requests that the deposition of Officer C. Perdue-Eaddy and the deposition of

Officer York be rescheduled."  ***If defendants do not produce Perdue-Eaddy and York for

deposition on or before January 30, 2009, on dates and times agreeable to plaintiff's counsel,

the Court should find defendants City of Detroit, Dondre Penn and Kevin Treasvant in default

as to plaintiff's allegations of liability in the first amended complaint and set the matter for

trial only as to damages.***

With respect to the deposition of the Detroit Police Custodian of Narcotics, defendant

---

[2]That same day, defendant filed a supplemental response to my show cause order.  Doc. Ent. 62.

City of Detroit's response and supplemental response to the Court's show cause order represent that "there is no such person or job title known as the Detroit Police Custodian of Narcotics[,]" Doc. Ent. 60 at 2 ¶ 5(f), and "[t]here is no such person or job title as the Custodian of Narcotics Records[,]" Doc. Ent. 62-4 at 2 ¶ 3(a) (Lewis Affidavit).

**D.      There Are Four Motions Currently Pending before the Court.**

Currently pending before this Court are several motions.  Defendant City of Detroit has filed (1) a December 18, 2008 motion for protective order regarding plaintiff's letter dated December 5, 2008 (Doc. Ent. 67);[3] and (2) a December 22, 2008 motion to compel work address of Michael Clay (Doc. Ent. 68).[4]  Plaintiff has filed (1) a December 30, 2008 motion to compel discovery (Doc. Ent. 74);[5] and (2) a December 30, 2008 motion to compel additional discovery including the completion of the deposition of Officer Edward Leahey and the production of documents reviewed by Officer Leahey immediately before his deposition (Doc. Ent. 75).

Judge Tarnow has referred each of these motions to me for hearing and determination. Doc. Entries 70 & 76.  Many of these motions have been noticed for hearing on January 28, 2009.  Doc. Ent. 78.

**E.      The Court should find defendants City of Detroit, Penn and Treasvant in Default as**

---

[3]Therein, defendant City requests "a. That Plaintiff's letter not be considered to be a motion, or in the event that letter is considered to be a motion; b. That Defendant not be required to produce any of the documents listed in Plaintiff's letter[;] [and] c. That Plaintiff's counsel be required to file a motion that conforms to the court rules so that the Court makes a ruling based only on the pleadings."  Doc. Ent. 67 at 2-3.

[4]Therein, defendant City requests that "plaintiff's counsel be ordered to provide a work address for Michael Clay so that Michael Clay's deposition can be immediately taken."  Doc. Ent. 68 at 2.  Plaintiff filed a response on December 30, 2008.  Doc. Ent. 71.

[5]This motion concerns plaintiff's October 13, 2008 discovery requests to Treasvant and the City of Detroit.  Doc. Ent. 74 at 1 ¶ 1.

**to Liability if Perdue-Eaddy and York are not provided for deposition as set forth above.**

"In *Regional Refuse*[,]we discussed the factors a district court should evaluate in determining whether to impose sanctions under Rule 37(b)(2)(C) for noncompliance with discovery orders[.]" *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1079 (6th Cir. 1990). "This court has determined that four factors are to be considered when reviewing a decision by a district court to impose sanctions under Rule 37." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (citing *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154-155 (6th Cir.1988)).[6] "The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered." *Freeland*, 103 F.3d at 1277. *See also Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 366-367 (6th Cir. 1997) (citing *Regional Refuse Systems, Inc.*, 842 F.2d at 153-155); *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995) (citing *Bank One of Cleveland, N.A.*, 916 F.2d at 1073).

"The use of dismissal as a sanction for failing to comply with discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar litigants from such misconduct in the future." *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir.

---

[6]*Regional Refuse Systems, Inc.* was superseded by Fed. R. Civ. P. 37(c)(1) in 1993. *See Vance, by and Through Hammons v. United States*, No. 98-5488, 1999 WL 455435, **6 (6th Cir. June 25, 1999). Fed. R. Civ. P. 37(c) governs a party's "failure to disclose; false or misleading disclosure; [or] refusal to admit." However, *Vance* acknowledges that the *Regional Refuse Systems, Inc.* test does apply to cases in which sanctions are brought pursuant to Fed. R. Civ. P. 37(b) or Fed. R. Civ. P. 41(b). *Vance*, 1999 WL 455435 at **6.

1995) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642-643

(1976)).  Dismissal of a case is appropriate if plaintiff's failure to respond to discovery ordered

by the court manifests "flagrant bad faith" and "callous disregard".  *National Hockey League*,

427 U.S. at 642-643.  However, "[d]ismissal is the sanction of last resort. It should be imposed

only if the court concludes that the party's failure to cooperate in discovery was willful, in bad

faith, or due to its own fault."  *Beil v. Lakewood Engineering and Manufacturing Co.*, 15 F.3d

546, 551-552 (6th Cir. 1994) (citing *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985 (6th Cir.

1988)).[7]

i.    **It is not clear that the delays in the depositions of Perdue-Eaddy, York and the Custodian of Narcotics are due to willfulness, bad faith or fault.**

With respect to the five (5) depositions directed to be taken by my October 21, 2008

order (Doc. Ent. 52), I note that Meadows's deposition was taken on December 19, 2008 (Doc.

Ent. 69 at 2 ¶ 9) and Leahey's deposition was taken on December 22, 2008 (Doc. Ent. 69 at 2 ¶

12).[8]  It follows that the remaining three (3) depositions to be taken are Perdue-Eaddy, York and

---

[7]The Court applies the same standard to determine whether default is an appropriate sanction as it does to determine whether dismissal is appropriate.  *Bank One of Cleveland, N.A.*, 916 F.2d at 1073; *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 459-60 (S.D. Ohio 1995); *Matter of Sams*, 123 B.R. 788, 790 (Bankr. S.D. Ohio 1991).

[8]In plaintiff's motion to compel additional discovery including the completion of the deposition of Officer Edward Leahey and the production of documents reviewed by Officer Leahey immediately before his deposition, "[p]laintiff prays for an Order compelling the immediate production of the medical intake form and detainee input sheet as reference[d] by Officer Edward Leahey in his deposition on December 22, 2008, said documents to be produced within three (3) days.  Plaintiff further prays for an Order of this Court compelling the continuation of Officer Leahey's deposition at a date and time to be designated by Plaintiff's counsel, said deposition to be completed at defense counsel's office.  Plaintiff further prays for an Order of this Court granting attorney fees and sanctions for Defendants' continued discovery abuses."  Doc. Ent. 75 at 3-4.

the Detroit Police Custodian of Narcotics.

Defendant City of Detroit's December 22, 2008 motion for relief from order provides some explanation for the delay in the taking of the Perdue-Eaddy and York depositions.  Doc. Ent. 69.  Therein, defendant City of Detroit requests that "the deposition of Officer C. Perdue-Eaddy and the deposition of Officer York be rescheduled."  Doc. Ent. 69 at 3.  As previously noted, I have entered an order granting this motion.

Likewise, defendant City of Detroit's response and supplemental response to the Court's show cause order represent that "there is no such person or job title known as the Detroit Police Custodian of Narcotics[,]"  Doc. Ent. 60 at 2 ¶ 5(f), and "[t]here is no such person or job title as the Custodian of Narcotics Records[,]" Doc. Ent. 62-4 at 2 ¶ 3(a) (Lewis Affidavit).  Also, defendant City of Detroit's December 18, 2008 motion for protective order states in part that "[t]here is no such person known as the Records Custodian[.]"  Doc. Ent. 67 at 2 ¶ 8(a).

As is set forth in my concurrently filed order, defendant City of Detroit's December 15th motion for protective order was unconvincing, as I had previously addressed the requests for deposition of York and Perdue-Eaddy.  However, by an order entered this date, I have granted defendant City of Detroit's December 22, 2008 motion to the extent it requests that the depositions of Perdue-Eaddy and York be rescheduled.  I am not convinced that the delay of these depositions was the result of willfulness, bad faith or fault.

On the other hand, as outlined above, defendant City of Detroit's filings seem to allege that it is impossible to take the deposition of the "Custodian of Narcotics."  However, according to the May 10, 2006 warrant request, Perdue-Eaddy's address is the Detroit Police Department, Narcotics Division Processing Unit.  Doc. Ent. 62 at 2 ¶ 4; Doc. Ent. 62-3 at 2.  Therefore,

8

defendant City of Detroit's claim that "there is no department within the Detroit Police Department known as the Department of Narcotics[,]" Doc. Ent. 67 at 2 ¶ 8(a), seems at least somewhat disingenuous.  Perhaps plaintiff's counsel and defense counsel can work together to determine who exactly plaintiff wishes to depose.  For example, maybe plaintiff just wants to depose the supervisor of the Narcotics Division Processing Unit.

## ii.    Nonetheless, plaintiff may be prejudiced by defendants' failure to cooperate in discovery.

It does appear that plaintiff would suffer at least some prejudice if the depositions of non-parties Perdue-Eaddy, York and/or the Custodian of Narcotics do not take place.[9]  As defendant City of Detroit stated in its December 15, 2008 motion for protective order, "York's 'involvement' in this case is limited to showing the police manual to Plaintiff's counsel[,]" and "Perdue-Eaddy's only involvement in this case was to sign the warrant request in this case . . . and present it to the prosecuting attorney for processing." Doc. Ent. 63 ¶¶ 7, 10.  Perdue-Eaddy was the complaining witness on the May 10, 2006 "Request for 36th District Court Traffic and Ordinance Warrant".  Doc. Ent. 63-3.

The Court is not really in a position to determine the level of prejudice that the absence of Perdue-Eaddy's and/or York's depositions would bring to this case.  However, I have previously ordered that these depositions take place, and plaintiff should be allowed to depose the complaining witness on the May 10, 2006 request for warrant, as well as York.

Perhaps any prejudice can be rectified.  The final pretrial conference was scheduled for

---

[9]Plaintiff's December 30, 2008 motion to compel additional discovery including the completion of the deposition of Officer Edward Leahey and the production of documents reviewed by Officer Leahey immediately before his deposition (Doc. Ent. 75) will be addressed in a separate order.

January 8, 2009 (Doc. Ent. 64), but it was adjourned.  Also, it does not appear that a trial date

has been set.  Obviously, if the depositions were actually taken, the prejudice of not having them

would be resolved.  If the roles of these officers is as minimal as defense counsel maintains, then

it should not be too difficult to schedule the depositions.  Clearly, the problem is getting them

scheduled AND taken, an effort this Court undertook on October 21st and November 25th of last

year and an effort this Court undertakes in Section II.C. of the instant report.

**iii.     Also, defendants were cautioned that failure to cooperate could lead to a finding of default as to liability.**

My November 25, 2008 order warned that "[i]f [certain] depositions are not completed

by the end of December 2008, I [would] file a report recommending that *defendants* be

considered in default as to liability and that the court set the matter for trial only as to damages."

Doc. Ent. 56 at 2 (emphasis added).[10]  It is clear that certain of the five (5) depositions have not

taken place and that defendants were warned about the consequences of not completing these

depositions by the end of 2008.  As described above, another warning appears in this report.

**iv.     Finally, less drastic sanctions have been imposed or considered.**

As noted in Section B of this report, the Court's involvement with the scheduling of these

depositions began on October 17, 2008 (Doc. Ent. 52) and was followed by the November 25,

2008 order (Doc. Ent. 56), the December 9, 2008 order to show cause (Doc. Ent. 58) and the

December 15, 2008 order discharging the order to show cause (Doc. Ent. 61).  Furthermore, this

report recommends that if the outstanding depositions are not taken by the end of this month,

---

[10]To be sure, attorney Marion R. Jenkins, City of Detroit Law Department, is representing all three defendants.  Doc. Entries 3, 4.  The only document filed by the individual defendants is the their December 13, 2007 answer.  Doc. Ent. 4.

then the Court should find defendants City of Detroit, Dondre Penn and Kevin Treasvant in default as to plaintiff's allegations of liability in the first amended complaint (Doc. Ent. 2) and set the matter for trial only as to damages.  Considering the course of action taken by the Court's implementation of these orders and the instant recommendation, it is fair to say that sanctions less drastic than a finding of default have been attempted.

### III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

11

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 1/13/09

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record   by
electronic means or U.S. Mail on January 13, 2009.

s/Eddrey Butts
Case Manager